## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

HENRY REYES CHAVEZ,

      Plaintiff,

v.                                          CV 09-1205 BB/WPL

CORRECTIONAL MEDICAL SERVICES ET AL.,

      Defendants.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Plaintiff Henry Chavez brought suit pursuant to 42 U.S.C. § 1983, the New Mexico Tort Claims Act, and common law alleging that he was subject to unconstitutional conditions of confinement while incarcerated at the Bernalillo County Metropolitan Detention Center (BCMDC). (*See* Doc. 31.)  On January 15, 2010, Defendants Torres, Sisneros, and Gallardo (County Defendants) filed a partial motion to dismiss on statute of limitations grounds.[1] (Doc. 12.) Chavez filed a response and the County Defendants filed a reply.  (Doc. 24, 26.)  On May 3, 2010, I granted Chavez leave to file a Second Amended Complaint.[2]  (*See* Doc. 28.)  I noted that the County Defendants could renew their motion to dismiss or incorporate it by reference in a new motion.  (*Id.* at 1.)  The County Defendants have filed another partial motion to dismiss on statute of limitations

---

[1] This motion is titled, "County Defendants' Motion for Partial Dismissal Based on the Bar Imposed by the Statute of Limitations."  Although the County Defendants indicate that the motion is made pursuant to Fed. R. Civ. P. 56 and D.N.M.LR-Civ. 56, it is clearly a motion to dismiss and not a motion for summary judgment.

[2] The amendment, which was not opposed, does not make any significant substantive changes to the complaint.  It merely adds to the First Amended Complaint pages 18 to 30, which were inadvertently omitted when Chavez filed it in state court.  The new pages include a few additional factual allegations but primarily list Chavez's causes of action.  These additions do not impact the arguments or the reasoning applicable to the statute of limitations analysis.

grounds. (Doc. 35.) Although they do not explicitly state that they are renewing the original motion to dismiss, or incorporate the original motion by reference, it is clear that the County Defendants intend to renew their original motion. The new motion repeats nearly verbatim the text of the original motion and is identical in substance.[3] Because the substance of the County Defendants arguments has been fully briefed, I find the motion ripe for recommendation. Chavez may incorporate any response to the County Defendants' new motion to dismiss in his objections to this report and recommendation. For the reasons that follow, I recommend that the County Defendants' first motion to dismiss (Doc. 12) be denied as moot and the second motion to dismiss (Doc. 35) be granted.

## DISCUSSION

In his Second Amended Complaint, Chavez alleges that he suffered retaliation, attacks and beatings by inmates and officials while incarcerated at the BCMDC. (*See* Doc. 31.) Chavez asserts that these incidents occurred on or about September 2005, September 19, 2005, September 24, 2005, February 8, 2006, February 9, 2006, March 31, 2006, July 24, 2006, July 25, 2006, August 9, 2006, August 14, 2006, September 21, 2006, April 24, 2007 and November 29, 2007. (*See id.*) Chavez filed suit in February 2009. The County Defendants argue that under the three-year statute of limitations applicable to § 1983 claims and the two-year statute of limitations applicable to the New Mexico Tort Claims Act, claims arising from the earlier incidents are time-barred.[4] In response,

_____

[3] The new motion to dismiss notes that it is made pursuant to Fed. R. Civ. P. 12(b)(6), not Fed. R. Civ. P. 56, and adds "August 2006" to the list of incidents that the County Defendants argue are barred on limitations grounds. These minor changes do not affect my recommendation.

[4] The incidents at issue are from September 2005, September 19, 2005, September 24, 2005, February 8, 2006, February 9, 2006, March 31, 2006, July 24, 2006, July 25, 2006, August 9, 2006, August 14, 2006, and September 21, 2006.

Chavez contends that equitable tolling or the continuing violation doctrine apply to make his claims from the earlier incidents timely.

### *Date Chavez Filed Suit*

Chavez originally filed suit in state court. On December 29, 2009, the County Defendants removed to federal court. The complaint attached to the notice of removal is Chavez's "First Amended Complaint for Damages for Personal Injuries, Tort and Civil Rights Violations." (*See* Doc. 3, Ex. A.) It is file stamped May 21, 2009. (*Id.*) When I granted Chavez leave to file a Second Amended Complaint, I ordered it filed as of the date of Chavez's motion to amend, which was January 21, 2010. In their motion to dismiss, the County Defendants state that Chavez filed suit on February 18, 2009 and base their statute of limitations argument on this date. The state court documents provided by the County Defendants include a "Complaint for Damages for Personal Injuries, Tort and Civil Rights Violations" which is filed stamped February 18, 2009, 2:56 p.m. (*See* Doc. 7.) Chavez, however, claims that he placed the complaint in the prison mailbox for filing on February 5, 2009 and thus appears to invoke the prison mailbox rule to establish that suit was filed on February 5, 2009. (Doc. 24 at 7.)

The state court documents include a certificate of mailing for the original complaint dated February 5, 2009. (*See* Doc. 7.) It states,

> I hereby certify that I mailed a true and correct copies [sic] of the following to the Second Judicial District for filing:
> 1. Two copies of "Complaint for Damages for Personal Injuries, Tort and Civil Rights Violations;
> . . .
> These documents were placed in the inmate mailbox at the Lea County Correctional Center on this 5th day of February, 2009 and witnessed by librarian D. Burris.

(*Id.*)  The document is notarized with the language "subscribed and sworn to before me on this 5th day of February, 2009, by Henry R. Chavez."  (*Id.*)

In *Houston v. Lack*, 487 U.S. 266, 276 (1988), the Supreme Court held that a *pro se* prisoner's notice of appeal would be considered timely if given to prison officials for mailing prior to the filing deadline, regardless of when the court itself received the document.  The Tenth Circuit has extended this mailbox rule to other contexts of *pro se* prisoner litigation, including the filing by a federal inmate of a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 and the filing by a state prisoner of a habeas petition under 28 U.S.C. § 2254.  *See Price v. Philpot*, 420 F.3d 1158, 1164 (10th Cir. 2005) (citing cases).  In *Price*, the Tenth Circuit extended the prison mailbox rule to federal civil rights complaints pursuant to 42 U.S.C. § 1983.  *Id.* at 1165.  It is not clear, however, that the rule applies to Chavez's civil rights complaint, which was originally filed in state court and then removed to federal court by the County Defendants on federal question grounds.  (*See* Doc. 3.)

In *Adams v. LeMaster*, 223 F.3d 1177 (10th Cir. 2000), the Tenth Circuit considered whether the prison mailbox rule applied to the filing of a state habeas petition for purposes of tolling the statute of limitations in the Antiterrorism and Effective Death Penalty Act.[5]  Based on the language of the statute and the interests of comity and due deference that AEDPA affords state courts, the circuit determined that state, not federal, procedural law defines when the state habeas petition is properly filed in state court.  *See* 223 F.3d at 1181.  Unable to find state law defining when a petition is properly filed, the Tenth Circuit looked to the New Mexico Rules of Criminal Procedure governing post-conviction petitions in state court.  Construing language in Rule 5-802B providing

---

[5] AEDPA's tolling provision states, "The time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).

4

that "a writ of habeas corpus will be issued only upon filing with the clerk of the court a petition on behalf of the party seeking the writ," the circuit concluded that the "the New Mexico Supreme Court would side with those state courts relying on the plain meaning of their respective state procedural rules to reject the prison mailbox rule." *Id.* at 1182, 1183.  In 2009, Rule 5-802B was amended.  It now also provides:

> If the petition is filed by a petitioner who is not represented by an attorney and who is confined to an institution, the petition is deemed to be filed with the clerk of the court on the day the petition is deposited in the institution's internal mail system for forwarding to the court provided that the petitioner states within the petition, under penalty of perjury, the date on which the petition was deposited in the institution's internal mail system.

N.M. R. Crim. P. 5-802B.  The committee commentary for the 2009 amendments actually cites *Adams* in explaining the purpose behind this added language.  *See* N.M. R. Crim. P. 5-802 committee commentary.  Thus, New Mexico now has a mailbox rule for *pro se* habeas litigation.

While the concerns for comity and due deference that underlie AEDPA do not apply with equal force to civil cases removed on federal question grounds, law outside of the habeas context suggests that state procedural rules also should govern when a civil rights complaint is deemed filed in state court.  Federal Rule of Civil Procedure 81 provides that the Federal Rules of Civil Procedure "apply to a civil action after it is removed from a state court."  FED. R. CIV. P. 81(c)(1).  Based in part on Rule 81, federal courts have held that state law controls the procedural question of whether service of process has been perfected prior to removal.  *See Wallace v. Microsoft Corp.*, 596 F.3d 703, 706 (10th Cir. 2010).  Federal courts have also held that state law governs the commencement of a suit involving hybrid claims under the Labor Management Relations Act and the National Labor Relations Act, when suit is initiated in state court.  *See Winkels v. George A. Hormel & Co.*, 874 F.2d 567, 569-70 (8th Cir. 1989).  In *Winkels*, the Eighth Circuit noted the well-established rule that

"a federal court must honor state court rules governing commencement of civil actions when an action is first brought in state court and then removed to federal court, even though the cause of action arises from federal law." *Id.* at 570; *see also Dravo Corp. v. White Consol. Indus.*, 602 F. Supp. 1136, 1139 (W.D. Pa. 1985) (finding that state procedural rules on commencement applied to toll statute of limitations in case originating in state court and removed to federal court).

Thus, it appears that New Mexico's procedural rules govern when Chavez filed his civil rights complaint. Although New Mexico's Rules of Criminal Procedure were amended to include a mailbox rule for *pro se* habeas petitioners, the Rules of Civil Procedure contain no such provision. Rule 1-003 provides, "A civil action is commenced by filing a complaint with the court." N.M. R. Civ. P. 1-003. I am unaware of any case law expounding on this provision. When faced with the task of predicting when the New Mexico Supreme Court would deem a state habeas petition properly filed, the Tenth Circuit relied on the plain meaning of Rule 5-802B. *See Adams*, 223 F.3d at 1183 (concluding that New Mexico would not adopt the mailbox rule based on the plain meaning of Rule 5-802B at the time). I am constrained to follow the same approach. This determination is supported by the fact that New Mexico has not taken any steps to incorporate a mailbox rule in the civil context as it did by amending Rule 5-802B. The plain language of Civil Rule 1-003 suggests that an action is commenced when the complaint is filed with the court. Under this interpretation, Chavez's complaint was filed on February 18, 2009.

Moreover, even if the federal prison mailbox rule applies, the result is the same. To get the benefit of the federal rule, a prisoner must use a prison's legal mail system, if one exists. *Price*, 420 F.3d at 1165. If the prisoner does not have access to a legal mail system, or if the existing system

6

is inadequate, the prisoner must submit a declaration in compliance with 28 U.S.C. § 1746[6] or a notarized statement, either of which must set forth the date the document was deposited with prison officials and attest that first-class postage was pre-paid.  *See id.* (citing *U.S. v. Ceballos-Martinez*, 387 F.3d 1140, 1145 (10th Cir. 2004).  Chavez's allegation that he "put [the complaint] in the prison mailbox at the Lea County Correctional Facility on February 5, 2009" is insufficient to establish use of the "legal mail system."  *See id.* at 1166 (holding allegation that prisoner used "the institutional mails" insufficient to connote use of "legal mail system").  Nor has Chavez established compliance with the mailbox rule by declaration or notarized statement.  The certificate of mailing does not attest that first-class postage was prepaid.  Chavez has not demonstrated compliance with the mailbox rule so his complaint must be treated as filed on February 18, 2009 when it was actually filed with the court.  *See United States v. Smith*, 182 F.3d 733, 735 n.1 (10th Cir. 1999) (refusing to apply mailbox rule to *pro se* inmate's notice of appeal because declaration of timely filing did not state that first-class postage had been prepaid).  In sum, under either state or federal procedural rules, Chavez's complaint was filed on February 18, 2009.

***Statute of Limitations***

"[T]he limitation period for an action under 42 U.S.C. § 1983 . . . is set by the personal injury statute of the state where the cause of action accrues."  *Roberts v. Barreras*, 484 F.3d 1236, 1238 (10th Cir. 2007).  In New Mexico, the limitation period for personal injury claims is three years.  N.M. STAT. ANN. § 37-1-8.  Although the limitation period is derived from the state personal injury statute, accrual of the cause of action, and thus when the limitations period begins to run, is

---

[6] "A declaration in compliance with 28 U.S.C. § 1746 includes a 'declaration, certificate, verification, or statement, in writing of such person which is subscribed by him as true under penalty of perjury, and dated.'"  *Price*, 420 F.3d at 1165 n.6 (quoting 28 U.S.C. § 1746).

governed by federal law.  *Price*, 420 F.3d at 1162.  "A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."  *Id.* (internal citations omitted).  "[I]t is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue."  *Id.* (internal citations omitted).  Actions under the New Mexico Tort Claims Act (NMTCA) must be "commenced within two years of the date of occurrence resulting in loss, injury, or death."  N.M. STAT. ANN. 41-4-15(A).  As the New Mexico Supreme Court has stated, "The plain language of the statute indicates that the period of limitations beg[ins] to run when an 'occurrence resulting in loss' [takes] place."  *Aragon & McCoy v. Albuquerque Nat'l Bank*, 659 P.2d 306, 310 (N.M. 1983).

The County Defendants are correct that the applicable statutes of limitations would bar certain claims arising out of the earlier incidents.  Under the three year statute of limitations, any § 1983 claims that accrued before February 18, 2006, more than three years before Chavez filed his complaint, would be time-barred.  These include the incidents of September 2005, September 19, 2005, September 24, 2005, February 8, 2006, and February 9, 2006.  Under the two year statute of limitations, any NMTCA claims that accrued before February 18, 2007, more than two years before Chavez filed suit, would be time-barred.  These include the incidents of September 2005, September 19, 2005, September 24, 2005, February 8, 2006, February 9, 2006, March 31, 2006, July 24, 2006, July 25, 2006, August 9, 2006, August 14, 2006, and September 21, 2006.  However, Chavez argues that equitable tolling or the continuing violation doctrine should apply to make these claims timely.

### *Equitable Tolling*

State law also governs equitable tolling issues.  *See Roberts*, 484 F.3d at 1240 (noting that "state law governs limitations and tolling issues in § 1983 cases").  In New Mexico, "'equitable tolling typically applies in cases where a litigant was prevented from filing suit because of an

extraordinary event beyond his or her control.'" *Id.* at 1241 (quoting *Ocana v. Am. Furniture Co.*, 91 P.3d 58, 66 (N.M. 2004)). "Such extraordinary events include conduct by a defendant that caused the plaintiff to refrain from filing an action during the applicable period." *Id.* (citing cases). However, equitable tolling only applies when a plaintiff is prevented from filing throughout the entire length of the statutory period. *See id.* at 1242 (quoting *Tomlinson v. George*, 116 P.3d 105, 111 (N.M. 2005) ("[I]f a plaintiff discovers the injury within the time limit, fraudulent concealment does not apply because the defendant's actions have not prevented the plaintiff from filing the claim within the time period and the equitable remedy is not necessary.")

Chavez argues that Defendants' own conduct requires equitable tolling of the statute of limitations. He complains that he was incarcerated at BCMDC from August to November 2005 and from December 2005 through March 2008 and that during that time he was completely dependant on the County Defendants for access to the law library. (Doc. 24 at 2.) He asserts that he was denied access to the law library and thereby denied access to the courts. Chavez filed numerous grievances regarding his lack of access to the library, which he claims were ignored. Moreover, according to Chavez, BCMDC policy and procedure require the law librarian to assist inmates with research and to draft, notarize, and copy documents. (*Id.*) They also require inmates to obtain a court order in order to receive legal supplies such as pens, writing paper and mailing envelopes. (*Id.* at 3.) Chavez claims that, contrary to this policy, he was forced to bribe an officer to obtain writing supplies and copies. (*Id.* at 3-4.)

Attached to Chavez's response brief are copies of the requests and grievances he made regarding library access. (*See* Doc. 24 Exs. C-J.) On November 15, 2005, Chavez complained that protective custody inmates had only been allowed to go to the library one time in the previous two and a half months. On May 22, 2007, Chavez filed a request to speak with someone about a court

order allowing him access to the library and allowing a family member to bring his legal materials into BCMDC.  On August 15, 2007, he filed a grievance against the law librarian, who Chavez claimed was interfering with his access to the library by not allowing him to work on civil matters. He also noted that he had deadlines approaching in September "with my claims against the jail." On August 21, 2007, Chavez requested access to the library and copies, writing paper, legal forms and envelopes.  He again mentioned that the "statute of limitations runs in Sept. 2007."  On September 2, 2007, Chavez directed a request for information to Henry Perera, stating that he spoke to Mr. Perera the week before about the problems he was having accessing the library and working on civil matters and that he had deadlines on his claims against the jail.  He asked Mr. Perera to contact the librarian.  On October 29, 2007 and December 5, 2007, Chavez again contacted Mr. Perera, complaining that he was still having problems accessing the library and that the librarian would not let him work on civil matters, and requesting that Mr. Perera instruct the librarian to stop blocking his access to the courts.  With few exceptions, Chavez received no response to his grievances.[7]

Chavez claims that, not only was he denied access to the library, but Defendants actively sought to block his access to the courts.  (Doc. 24 at 4.)  He alleges that on January 22, 2008, he was transferred from protective custody to segregation IV and his personal property was confiscated including legal files, writing paper and pen.  Chavez explains that, in this suit he is alleging that he was "subjected to numerous assaults and beatings and numerous other constitutional violations over the course of approximately 30 months . . . and to prolonged and excessive and extensive variations

---

[7] A notation on Chavez's grievance of November 5, 2005 states, "Mr. Chavez is approved for access to the law library.  On 2 occasions there was no transport available (or willing).  Need more cooperation from Seg Unit.  (Escorted on 11/22/05)."  Also, the response to Chavez's May 22, 2007 request for access to the library states, "I went by to speak to him personally + he said he would go talk to you."

of unconstitutional conditions of confinement." (*Id.* at 4-5.)  Without his legal files, he could not "remember all the information (including parties names and involvement - a jurisdictional issue) needed in order to state even the most basic claim now alleged with particularity." (*Id.* at 5.)  In other words, Chavez argues that he could not state a claim that would satisfy the pleading requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and his complaint would have been subject to dismissal.  Chavez asserts that he was transferred from BCMDC in March 2008, "without his legal files and was forced to reconstruct each incident to include all the facts, names of parties etc., by searching through more than 800 pages of documents provided by County Defendants on August 28, 2008 in another case." (*Id.* at 6.)  He asks that the court find that his causes of action against the Defendants accrued on August 28, 2008, "the day the Plaintiff was able to discover the information he needed in order to bring his claims against them." (*Id.* at 7.)

In *Roberts*, the Tenth Circuit considered a similar tolling argument.  There, the plaintiff argued that he was denied access to the prison's library and to the legal materials necessary to draft a complaint against the defendants.  The court found that "lack of access to the library kept him from researching the very question at issue in [the] appeal: the applicable statute of limitations." *Roberts*, 484 F.3d at 1242.  However, the court concluded that this was not sufficient to prevent his claims from expiring because the plaintiff had been released from the facility two years before the statute of limitations expired.  *See id.* (citing *Tomlinson*, 116 P.3d at 111).

Like Roberts, Chavez has not shown that the County Defendants' conduct prevented him from filing during the entire limitations period.  Although the grievances suggest that Chavez had difficulty accessing the law library in November 2005, May 2007, and from September to December, 2007, Chavez has not explained his failure to file for the year and a half between

11

November 2005 and May 2007, or his failure to file between May 2007 and September 2007, or after December 2007.

Similarly, Chavez's assertions that he could not state a claim sufficient to satisfy *Twombly*'s pleading requirements without his legal files are to no avail. Chavez's claims accrued when he learned of the injury, which, given his allegations of attacks and beatings, clearly occurred at the moment of each incident he describes. The confiscation of his legal files on January 22, 2008 does not explain Chavez's failure to file suit between November 2005 and May 2007 or between May 2007 and September 2007. Moreover, Chavez has provided no legal basis for his argument that inability to satisfy *Twombly*'s pleading requirements can toll the statute of limitations. The more appropriate approach would be for a plaintiff to file suit within the statute of limitations with the facts that he can remember and then respond to a motion to dismiss for failure to state a claim by explaining the defendants' allegedly improper conduct, and by seeking discovery of the confiscated files. In sum, Chavez has not demonstrated that equitable tolling applies to his claims.

### *Continuing Violation Doctrine*

In the alternative, Chavez argues that the continuing violation doctrine applies to make his claims from the earlier incidents timely. The continuing violation doctrine is an equitable principle that arose in the context of Title VII discrimination cases. *See Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). It recognizes that certain violations, such as harassment and hostile work environment, are continuing in nature; that is, they involve repeated conduct. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Legal claims for these violations are based on the cumulative effect of such conduct. *Id.* Under this doctrine, a plaintiff may challenge incidents that occurred outside the limitations period if those incidents contributed to the claim. *Id.* at 117. The doctrine does not apply to discrete acts such as termination, failure to promote, denial of transfer,

12

or refusal to hire, or to single acts that produce continuing ill effects. *See id.* at 114 (holding that "each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice"); *Bergman v. U.S.*, 751 F.2d 314, 317 (10th Cir. 1984) (noting that "[a] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from the original violation").

The Tenth Circuit has not definitively ruled on whether the continuing violation doctrine applies to § 1983 claims. *See Burkley v. Corr. Healthcare Mgmt. of Okla., Inc.*, 141 F. App'x 714, 716 & n.2 (10th Cir. 2005) (noting dispute over whether continuing violation doctrine applies to § 1983 suits); *see also Hunt*, 17 F.3d at 1266 (noting that plaintiff cited no cases extending the doctrine to § 1983 suits). However, the circuit has suggested that the doctrine should be applied narrowly. *See Rassam v. San Juan Coll. Bd.*, No. 95-2292, 1997 WL 253048, at *3 (10th Cir. May 15, 1997) (unpublished) (discussing applicability of continuing violation doctrine outside of employment discrimination context and citing cases); *see also McCormick v. Farrar*, 147 F. App'x 716, 720-21 (10th Cir. 2005) (noting that circuit has not announced precedential blanket rule that doctrine is inapplicable to § 1983 suits but citing *Rassam* for proposition that it should be applied narrowly.)

New Mexico has adopted a continuing violation doctrine for state law claims arising under the New Mexico Human Rights Act similar to that developed in federal court for Title VII claims. *See Ulibarri v. N.M. Corr. Acad.*, 131 P.3d 43, 48 (N.M. 2006). I am unaware of any cases in which New Mexico recognizes a continuing violation theory outside the context of NMHRA claims.

Chavez makes a variety of claims against the County Defendants. Claim one, pursuant to 42 U.S.C. § 1983, is directed at BCMDC "employee defendants"—who include Gallardo, Torres, and Sisneros—and alleges excessive force and failure to intervene to prevent the misuse of force.

(*See* Doc. 31 at 20-21.)  Claim two, under the NMTCA, is directed at BCMDC "employee defendants" and "supervisory defendants"—who include Torres and Sisneros—and alleges assault and battery, failure to prevent assault and battery, and aiding and abetting in assault and battery.  (*Id.* at 21-22.)  This claim also alleges that the supervisory defendants failed to train and supervise BCMDC officers and failed to institute and enforce safeguards to protect pretrial detainees from assault and battery by corrections officers and from predatory inmates.  (*Id.* at 22.)  Claim three is also directed at BCMDC employee and supervisory defendants and alleges negligent operation of a public facility, including failure to train and supervise employee defendants and failure to institute and enforce safeguards to protect pretrial detainees from assault and battery and predatory officers and inmates.[8]  (*Id.* at 23-24.)  Claim four, pursuant to 42 U.S.C. § 1983, is directed at all defendants and alleges retaliation.  Chavez claims that all the defendants retaliated against him when he reported the beatings and unconstitutional conditions of confinement.  He alleges that "the retaliatory conduct to which Plaintiff was subjected to [sic] was so pervasive that it constituted a custom, practice and policy illustrating the deliberate indifference of the supervisory defendants . . . to the rights of Plaintiff."  (*Id.* at 24.)  Finally, claim seven, also pursuant to 42 U.S.C. § 1983, is directed at supervisory defendants, including Torres and Sisneros, and alleges failure to adopt appropriate policies and procedures as well as failure "to properly screen, hire, train, monitor, supervise, and/or discipline correctional officers."[9]  (*Id.* at 28.)

---

[8] Although Chavez does not cite the NMTCA, this claim also appears to arise under that statute.  *See* N.M. STAT. ANN. 41-1-6 (waiving government immunity for negligence of public employees in the operation and maintenance of public facilities); *see also Archibeque v. Moya*, 866 P.2d 344, 347 (N.M. 1993) (noting the purpose of N.M. STAT. ANN. 41-1-6 is to "ensure the general public's safety by requiring public employees to exercise reasonable care in maintaining and operating the physical premises owned and operated by the government").

[9] Claims five and six are directed at defendants who have not yet been served and/or have not moved to dismiss.

The County Defendants characterize Chavez's complaint as alleging "numerous specific instances of misconduct, including excessive force, beatings he received from other inmates, various changes to housing assignment, threats and coercive action, improper conduct of disciplinary proceedings and investigations, improper treatment of grievances and requests, statements made directly to him and the denial of privileges and amenities." (Doc. 26 at 8.) The County Defendants view Chavez's claims for excessive use of force, assault, battery, negligent operation of a public facility, retaliation, and supervisory liability as based on individual instances of conduct, rather than cumulative conduct. Thus, the County Defendants argue, each of these alleged incidents constitutes a separate actionable cause of action, not subject to the continuing violation doctrine, and, therefore, time-barred.

Citing a 1997 Ninth Circuit case, Chavez argues that the continuing violation doctrine applies to § 1983 cases and, in particular, that it applies to his *Monell*[10] claims. (Doc. 24 at 8 (citing *Gutowsky v. County of Placer*, 108 F.3d 256 (9th Cir. 1997)).) He asserts that "a continuing violation may be established through a series of related acts against one individual, or by a systematic policy or practice." (*Id.*) Chavez claims that he has alleged a series of related acts, citing the description in his complaint of numerous beatings by inmates and officers. (*Id.* at 9.) He also argues that the County Defendants' custom or policy of retaliation triggers the continuing violation doctrine. (*Id.* at 10.)

Assuming that the continuing violation doctrine applies to § 1983 suits, it would not apply to Chavez's claims. His allegations of excessive force and failure to intervene to prevent the misuse

---

[10] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *Monell* established municipal liability under 42 U.S.C. § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 690.

of force in his first claim arise from discrete incidents that are individually actionable.  Similarly, the allegations in his seventh claim that the supervisory defendants failed to adopt appropriate policies and to properly screen, hire, train, monitor, supervise, and discipline corrections officers refer to discrete acts that are not subject to the continuing violation doctrine.  *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 280 (5th Cir. 2004) (noting that discrete acts, such as failure to train, are separately actionable, and may not be pursued outside the relevant limitations period).

Chavez's citation to *Gutowsky* for the proposition that a series of related acts constitutes a continuing violation is erroneous.  In *Morgan*, issued after *Gutowsky*, the Supreme Court rejected this "serial violation" approach to continuing violations, holding that discrete acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charged."  536 U.S. at 113, 114.  Chavez also argues that the retaliation allegations in his fourth claim demonstrate a custom, practice or policy, which by their very nature must be continuing violations.  However, again, the retaliatory conduct Chavez alleges arises from discrete incidents.  As the Supreme Court explained in *Morgan*, "each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"  *Id.* at 114.

Finally, the continuing violation doctrine is not applicable to claims two and three because New Mexico has not recognized the doctrine for NMTCA claims.  Because the continuing violation doctrine does not apply to any of Chavez's claims against the County Defendants, it cannot make his claims timely.  They are, therefore, barred by the applicable statutes of limitations for § 1983 and NMTCA claims.

## CONCLUSION

For the foregoing reasons, I recommend that the County Defendants' original motion to dismiss (Doc. 12) be denied as moot and their new motion to dismiss (Doc. 35) be granted; that is,

that any § 1983 claims against Defendants Torres, Sisneros and Gallardo that arise from pre-February 18, 2006 incidents and any NMTCA claims against Defendants Torres, Sisneros and Gallardo that arise from pre-February 18, 2007 incidents be dismissed with prejudice.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

---

_William P. Lynch_

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.          17