# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

HENRY REYES CHAVEZ,

          Plaintiff,

v.                                                   CV 09-1205 BB/WPL

CORRECTIONAL MEDICAL SERVICES et al.,

          Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING RECONSIDERATION AND AMENDING THIS COURT'S ORDER OF AUGUST 20, 2010 (DOC. 44)

This matter is before the Court on Plaintiff Henry Chavez's Motion for Reconsideration (Doc. 45) of this Court's Order Adopting In Part and Rejecting In Part the Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 44). Having used its general discretionary authority to review its Order, this Court GRANTS the Motion to Reconsider and AMENDS its Order of August 20, 2010 (Doc. 44) to exclude Chavez's § 1983 claims that occurred on September 19, 2005 and September 24, 2005 (*see* Doc. 31 at 5-6, ¶¶ 24-26) from dismissal based on recalculation of the applicable three year statute of limitations.

## BACKGROUND

On August 20, 2010, this Court issued an Order (Doc. 44) adopting in part and rejecting in part the magistrate judge's Proposed Findings and Recommended Disposition (Doc. 36). The Order dismissed all of Chavez's state law claims that arose before February 18, 2007.[1] The Order also

---

[1] In their response to Chavez's Motion for Reconsideration, County Defendants incorrectly state that the Order dismissed all state law claims that arose "on or before" February 18, 2007. (Doc. 50 at 2.) The Order dismissed NMTCA claims that arose from "pre-February 18, 2007 . . . ." (Doc. 44 at 6.)

dismissed all of Chavez's § 1983 claims that arose before February 18, 2006,[2] with the exception

of Chavez's § 1983 claims that occurred on February 8 and February 9 of 2006.  These claims

survived the applicable three year statute of limitations because of this Court's finding of nineteen

days of statutory tolling for each claim, pursuant to *Roberts v. Barreras*, 484 F.3d 1236 (10th Cir.

2007).

In his Motion for Reconsideration, Chavez argues that three of his other § 1983 claims

should have been tolled for more than 180 days, thereby surviving the statute of limitations.  Chavez

presents a Grievance Appeal Form that was not previously submitted to this Court.  (Doc. 45, Ex.

A.)  The appeal form references Chavez's Grievance Form #7668 (*see* Doc. 43, Ex. 1), as well as

Grievance Forms #7672 (*see* Doc. 43, Ex. 2) and #7667.  *See Chavez v. Jaramillo et al.*, No. CV-08-

0074 WJ/ACT (D.N.M. July 19, 2010), Doc. 28, Ex. 11 at 5.  As it did in its Order filed August 20,

2010 (*see* Doc. 44 at 5), this Court takes judicial notice of Grievance Form #7667, which can be

found in case No. 08cv0074, Document 28.[3]  Chavez notes that these three grievances pertain to

the § 1983 claims that he raised in paragraphs twenty-four, twenty-five, and twenty-six of his second

amended complaint.  (Doc. 31 at 5-6, ¶¶ 24-26; *see also* Doc. 45 at 4.)

Chavez argues that his new evidence shows that the three grievances (hereinafter "Disputed

Grievances") were not completed on October 28, 2005, a "fact" on which the Order filed August 20,

2010, was premised.  (Doc. 44 at 5.)  Instead, Chavez contends that the grievances remained viable

---

[2] County Defendants also misstate this component of the Court's Order, declaring that it dismissed all § 1983 claims that arose "on or before February 18, 2006."  (Doc. 50 at 2.)

[3] In its Order of August 20, 2010, this Court took judicial notice of specific grievances that Chavez had filed in another case, No. 08cv0074,  that was before this Court at that time.  (Doc. 44 at 4-5.)  In his Motion for Reconsideration, Chavez identifies two more grievance forms that were filed in the same case.  (*See* Doc. 45 at 4.) Grievance Form #7667 can be found in case No. 08cv0074, Document 28 at 5.  Grievance Form #7672 can be found in case No. 08cv0074, Document 28 at 4.  Grievance Form #7672 was also provided in the County Defendants' response to the magistrate judge's Proposed Findings and Recommended Disposition.  (*see* Doc. 43 at 2.)

under the Bernalillo County Metropolitan Detention Center's (hereinafter "BCMDC") grievance procedures until the final disposition date on the Grievance Appeal Form, which is May 1, 2006. As a result, Chavez argues that his § 1983 claims in paragraphs 24, 25 and 26 of his second amended complaint (hereinafter "Disputed Claims") should receive additional statutory tolling of more than 180 days. Such a finding would make each of the Disputed Claims timely and mean that they should not have been dismissed by this Court.

In response, Defendants Torres, Sisneros, and Gallardo (hereinafter "County Defendants") contend that the Disputed Claims should only have received additional statutory tolling of five days. (Doc. 50 at 3, 7.) County Defendants have, for the first time,[4] provided BCMDC's Grievance Policy No. 1309 (*see* Doc. 50, Ex. A), which they say required Chavez to appeal the Disputed Grievances three business days from the date that the forms were returned to him. (*Id.* at 3-4, 7-8.) County Defendants argue that because Chavez did not file an administrative appeal within three business days of October 28, 2005, when he signed the grievance forms as unresolved, all three Disputed Grievances became unviable under BCMDC procedures three business days (and five calendar days) later, at the end of November 2, 2005. (*Id.* at 7.) With only five additional days of statutory tolling, all three of Chavez's Disputed Claims would remain untimely.

### STANDARD OF REVIEW

"A district court has discretion to revise interlocutory orders prior to entry of final judgment." *Trujillo v. Bd. of Educ. of Albuquerque Pub. Sch.*, 212 F.App'x 760, 765 (10th Cir. 2007) (unpublished) (citing *Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005) ("[E]very

---

[4] County Defendants have not explained why Grievance Policy No. 1309 was not furnished earlier in this case.

order short of a final decree is subject to reopening at the discretion of the district judge.")).  Rule 54(b) provides that:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

FED. R. CIV. P. 54(b).  The Tenth Circuit has noted that motions to reconsider filed prior to final judgment are therefore "nothing more than an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment."  *Trujillo*, 212 F.App'x at 765 (quoting *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991)).

This Court's Order of August 20, 2010 did not adjudicate all of Chavez's claims and was not a final judgment.  Therefore, this Court has general discretionary authority to review the order in light of the new evidence presented by Chavez and County Defendants.

In their response, County Defendants have confused the standards of review for motions to reconsider final judgments with those for motions to reconsider interlocutory orders entered prior to final judgment.  (Doc. 50 at 3.)  As a result, County Defendants declare that Chavez must meet the heightened standards for review of a post-judgment motion filed under Rule 59(e) or Rule 60(b).  (*Id.*)[5]  Because this Court's Order of August 20, 2010 was not a final judgment, these standards do not apply.  Furthermore, because this issue involves only the consideration of new facts and does not involve a change in this Court's application of any rule of law, the "law of the case doctrine" also does not apply.  *See Trujillo*, 212 Fed.Appx. at 765-66 (holding that because the district court

---

[5] Even under this standard, however, a court may reconsider a judgment to evaluate the availability of new evidence or prevent manifest injustice.  *In re Sun Healthcare Group, Inc.*, 214 F.R.D. 671, 673 (D.N.M. 2003).

4

considered only new facts, the law of the case doctrine and the more stringent requirements for review of Rule 59(e) and Rule 60(b) motions were not applicable).

DISCUSSION

State law governs statute of limitations and tolling issues in § 1983 cases. *Braxton v. Zaveras*, 614 F.3d 1156, 1159 (10th Cir. 2010)*; Roberts*, 484 F.3d at 1240 (citations omitted). New Mexico law provides that "[w]hen the commencement of any action, shall be stayed or prevented by injunction order or other lawful proceeding, the time such injunction order or proceeding shall continue in force shall not be counted in computing the period of limitation." N.M. STAT. ANN. § 37-1-12 (1978). The Tenth Circuit has found that mandatory grievance proceedings fall under this statute, meaning that the statute of limitations tolls while a mandatory grievance proceeding is pending. *Roberts*, 484 F.3d at 1242. In order to determine the tolling period, however, "we must know how long [the] grievance remained viable under the institution's grievance procedures in effect at the time of [the] grievance." *Id.* at 1243.

In their response to Chavez's Motion to Reconsider, County Defendants have now provided BCMDC's Grievance Policy No. 1309. (Doc. 50, Ex. A.) In the magistrate judge's Order of July 13, 2010, County Defendants were ordered to "address the Tenth Circuit's discussion of statutory tolling in *Roberts v. Barreras*," which required a determination of "how long [the] grievance[s] remained viable under the institution's grievance procedures . . . ." (Doc. 42.) County Defendants did not provide or mention Grievance Policy No. 1309 in their response to the magistrate judge's Order. (*See* Doc. 43.) This Court agrees with Chavez that "without the policy [before the Court], there is simply no way to independently determine how long the grievance remained in force." (Doc. 45 at 2.) Therefore, County Defendants disobeyed the magistrate judge's Order when they did not

submit Grievance Policy No. 1309 with their response on July 30, 2010.[6] (*See* Doc. 43.)  In light of

the newly produced grievance form and procedures, this Court will reconsider its prior Order.

Under New Mexico law, "the party claiming that the statute of limitations should be tolled

has the burden of setting forth sufficient facts to support its position."  *Roberts*, 484 F.3d at 1240

(quoting *City of Carlsbad v. Grace*, 966 P.2d 1178, 1181 (Ct.App. 1998)).  Chavez therefore bears

the burden of showing why his Disputed Claims should have been tolled until the end of May 1,

2006, under BCMDC's Grievance Policy No. 1309.

The thrust of Chavez's argument is that none of the three grievances were "completed" on

October 28, 2005, as the County Defendants asserted and this Court previously accepted as true.

(*See* Doc. 43 at 6, 8;  Doc. 44 at 5.)  Grievance #7672 was filed on September 30, 2005, while

Grievances #7667 and #7668 were filed on September 29, 2005.  Chavez notes that on Grievance

#7668, next to the entry for "response to grievance/request," the handwritten message "report will

be looked for and reviewed" appears.  (Doc. 43, Ex. 1.)  The same message appears on Grievance

#7672.  (Doc. 43, Ex. 2.)  On Grievance #7667, the message "report will be looked for at this time"

---

[6] County Defendants have also ignored the instructions in *Roberts* by failing to indicate whether Grievance Policy No. 1309 was in effect during September of 2005, when Chavez filed the Disputed Grievances.  In his reply, Chavez argues that because of this deficiency, under *Roberts* the policy is "not valid" and should not be considered. (Doc. 53 at 2.)  This Court disagrees, because as Chavez himself argued in his motion, in order to comply with *Roberts* a court must review an actual policy in order to determine how long a grievance remained viable.

Because this Court finds for Chavez, however, it will not order County Defendants to supplement the record with proof that Grievance Policy No. 1309 was in effect during September of 2005.  In *Roberts*, the Tenth Circuit reversed and remanded for the district court to determine the nature of the grievance process at the time that Plaintiff filed grievances, after (1) finding that there were internal contradictions in grievance documents and an affidavit filed by Defendants; and (2) after Plaintiff claimed that his grievance was filed under an earlier grievance process that was not part of the record.  484 F.3d at 1243-44.  Here, the record is not "unclear" in the same way.  *See id.* at 1244.  There are no internal contradictions, and although Chavez has disputed that Grievance Policy No. 1309 was in effect (Doc. 53 at 2), he has not argued that his grievances should have been processed under a different policy.  County Defendants have presented a grievance policy that they claim was in effect during September of 2005, and this Court finds for Chavez after analyzing his grievances under County Defendants' policy.  Although Chavez argues that he was denied access to Grievance Policy No. 1309 or that it otherwise was not in effect (Doc. 53 at 2, 4-5), there is no need to reach these issues because any relief provided would not alter this Court's conclusion.

appears, along with four illegible words.  *Chavez*, No. CV-08-0074 WJ/ACT, Doc. 28, Ex. 11 at 5.

When asked whether the problem was resolved or whether his grievance was withdrawn, Chavez

checked "no" on each grievance form, dated them October 28, 2005, and signed them.  In his Motion

for Reconsideration, Chavez alleges that he never received a more substantive response to these

grievances, and "about seven (7) months" later, his Case Manager gave him a Grievance Appeal

Form and told him to appeal the grievances.  (Doc. 45 at 3.)

On the Grievance Appeal Form that he has provided, Chavez references each of the Disputed

Grievances by number.  (Doc. 45, Ex. A.)  On the Appeal Form, Chavez has written that "I have

never been provided with a response to any of these grievances or opportunity to appeal.  I have sent

written two written request [sic] thru case manager Paul and McDonaled with no response to status

of grievances."  (*Id.*)  The form is marked that it was "received by staff" on April 18, 2006, and is

signed by Chavez's Case Manager.  (*Id.*)  Below, there is a note, presumably from the Community

Corrections Specialist, that "[t]he copies of these grievances are attached with this appeal [sic] you

signed the response unresolved."  (*Id.*)  The form indicates that it was forwarded to the Chief of

Corrections on April 27, 2006, and lists a final disposition date of May 1, 2006.  (*Id.*)  In a space

where the Chief of Corrections provides his conclusion, the form says only "concur."  (*Id.*)

Chavez argues that these facts demonstrate that his Disputed Grievances remained viable

under BCMDC procedures from their filing dates until the final disposition date of May 1, 2006.

Such a finding would toll the statute of limitations to make all three Disputed Claims timely and

require this Court to modify its Order of August 20, 2010.  (Doc. 44.)

The crux of County Defendants' response is that Grievance Policy No. 1309 required Chavez

to appeal the Disputed Grievances within three business days from when he received them back

from BCMDC administration, in order for the grievances to remain viable under BCMDC policy.

(Doc. 50 at 3, 4, 7.)  Grievance Policy No. 1309 provides that "[i]t is the responsibility of the inmate to initiate the appeal process" and "[t]he inmate must request an appeal form . . . from the Case Manager."  (Doc. 50, Ex. A at 5.)  The grievance forms have a line where inmates can affirmatively mark that they "do wish to appeal," and this line is blank on each of the Disputed Grievances. Therefore, County Defendants conclude that the Disputed Grievances all became non-viable under BCMDC procedures at the end of November 2, 2010.  Although this date is five days later than the date previously found by this Court (Doc. 44), the additional five days do not save Chavez's Disputed Claims from untimeliness.

There are two problems with County Defendants' argument.  Underlying both is the fact that Grievance Policy No. 1309 does not say what County Defendants claim it does.

The relevant portions of Grievance Policy No. 1309 for this dispute come from the following sections.  Sections (C)(1)-(3) explain that the Grievance Manager collects filed grievances after they have been reviewed by the inmates' Case Managers.  (Doc. 50, Ex. A at 4.)  Section (C)(4) outlines the duties of the Grievance Manager after he has received the grievances.  (*Id.*)  Section (C)(4)(a), which summarizes the procedure for "Normal Grievances," provides as follows:

1) Determine which appropriate division manager will receive the grievance.
2) Grievance Manager will record on his/her grievance log the person, date and time given to the appropriate division manager.
3) Appropriate division manager responds to the grievance and gets inmate's signature on the MDC-5 form. *"Returns the yellow copy to the inmate as a copy of *answer*.
4) Grievance is returned to the Grievance Manager with in [sic] ten (10) working days.
5) Grievance is acknowledged as resolved on the Grievance Manager's log and in the database.
    a) All resolved grievances are forwarded to the Case Manager Administrative Assistant to be filed in the inmate's file and reported by e-mail to the proper Case Manager by number as resolved. (The Case Manager will then make [sic] his/her log as resolved).

>        b)        The Grievance Manager investigates all unresolved
>                  grievances. (See Responsibility and Operations).

(*Id.* (emphasis added).)

Section (D), entitled "Responsibility and Operations," provides that:

1.      The *Grievance Manager* is responsible for following and monitoring
        operational grievance procedures.
2.      In the case of an unresolved grievance the Grievance Manager will
        investigate the *action taken* by the appropriate division manager and appeal
        is given upon request.
3.      The inmate has three (3) working days to appeal the *decision* of the
        Grievance to the Deputy Director.  If the inmate does not appeal, *it will be
        understood that he/she has accepted the answer.*

(*Id.* at 5 (emphasis added).)

Section (E), entitled "Appeal Process," provides that:

1.      It is the responsibility of the inmate to initiate the appeal process.
2.      The inmate must request an appeal form (MDC-4) from the Case Manager.
3.      The appeal must be submitted in writing on the appeal form, via the Case
        Manager, *within three (3) working days from the date the inmate receives the
        response from the Grievance Manager.*  The notice of appeal must state in
        specific terms the basis of the appeal.

(*Id.* (emphasis added).)

Taken together, Grievance Policy No. 1309 appears to operate as follows: (1) the Grievance

Manager collects properly filed grievances and distributes them to the appropriate division

managers; (2) the division manager responds to the grievance, obtains the inmate's signature on the

grievance form, then returns the grievance form to the Grievance Manager within ten working days

(while giving the inmate a copy of the signed form); (3) the Grievance Manager sends grievances

marked as "resolved" to the relevant Case Manager, for filing and closing; but (4) in the case of an

"unresolved" grievance, the Grievance Manager investigates the action taken by the appropriate

division manager and "appeal is given upon request."  (Doc. 50, Ex. A at 4-5.)

County Defendants state that when an inmate signs a grievance form acknowledging receipt, under step two in the above paragraph, he must also mark at that time whether he intends to file an appeal.  (Doc. 50 at 7 (citing to section (C)(4)(a), Doc. 50, Ex. A at 4).)  This instruction is not included in Grievance Policy No. 1309, however.  Furthermore, County Defendants argue that "[a]fter the grievance is returned to the inmate, the inmate has three (3) working days within which to file an administrative appeal."  (Doc. 50 at 7.)  Because County Defendants argue that Chavez's appeal deadline commenced on October 28, 2005, when he signed the Disputed Grievances acknowledging his receipt, Defendants appear to be referring to the point in time when the division manager obtains the inmate's signature on the grievance form, again under step two in the paragraph above.

However, section (E)(3) is clear that "[t]he appeal must be submitted . . . within three (3) working days from the date the inmate receives the response from the Grievance Manager." (Section (E)(3), Doc. 50, Ex. A at 5 (emphasis added).)  At the stage in the process when the inmate signs the grievance form, the form is in possession of the appropriate division manager, not the Grievance Manager.  (*See* section (C)(4)(a)(3), Doc. 50, Ex. A at 4.)  Therefore, it would not be possible for the appeal deadline to begin at this juncture, since the inmate has not yet received anything from the Grievance Manager.

The only time that an inmate could receive a response from the Grievance Manager, as opposed to the appropriate division manager, would seem to be during or after step four in the process, when the Grievance Manager investigates unresolved grievances.  It is only at this stage that the Grievance Manager would interact with the inmate, presumably by providing the inmate

with the results of the Grievance Manager's investigation.[7]   Therefore, County Defendants are incorrect that Chavez's appeal deadline commenced on October 28, 2005, when he received his grievance forms from his division manager and signed them as unresolved.  His appeal deadline could not begin to run until he "[received a] response from the Grievance Manager."  (Doc. 50, Ex. A. at 5.)

Chavez has presented new facts that, if true, demonstrate that he never received a response to his grievances from the Grievance Manager. *See City of Carlsbad*, 966 P.2d at 1181 ("[T]he party claiming that the statute of limitations should be tolled has the burden of setting forth sufficient facts to support its position.").  On the Grievance Appeal Form that he has provided, Chavez wrote that he was never provided with a response to any of the Disputed Grievances.  (Doc. 45, Ex. A.)  In his Motion to Reconsider, Chavez repeats this allegation and says that the only way he learned the outcome of his grievances was when his Case Manager gave him a Grievance Appeal Form, months after he had signed the grievance forms as unresolved.  (*Id.* at 3.)  In his reply, Chavez has provided a letter he sent to Defendant Torres, dated February 28, 2006, that asks for assistance in obtaining a "written response letting me know your decision" regarding Chavez's grievances.  (Doc. 53, Ex. C.)  Chavez has also provided an Inmate Request Information Form, dated March 15, 2006, where he asks the status of two of the Disputed Grievances.  (*Id.*, Ex. C.)

County Defendants have not disputed these facts.  Additionally, despite having failed to previously present the Grievance Appeal Form that Chavez submitted with his Motion for

---

[7] This Court is cognizant that Grievance Policy No. 1309 does not expressly provide for the mechanism or procedure by which the Grievance Manager would provide a response to inmates.  Such a response could conceivably require another form, because there is no express location on the Grievance Forms, when viewed under Grievance Policy No. 1309, for the Grievance Manager to provide a response.  Such a form is not before this Court, however, and County Defendants have asserted that they "have conducted a review of the available documents . . . ."  (Doc. 43 at 6.)

Reconsideration, County Defendants reassert that they have "[provided] all available copies of the grievances filed by Plaintiff . . . ." (Doc. 50 at 2.) There are no documents before this Court that could constitute a response to Chavez from the Grievance Manager, triggering the appeal deadline.[8]

As a result, this Court finds that Chavez did not receive a response from the Grievance Manager. Without one, the appeal deadline was not triggered under the express language of Grievance Policy 1309. Furthermore, nothing in Grievance Policy No. 1309 prevents an inmate from filing an appeal without or before receiving a response from the Grievance Manager. Therefore, Chavez and his Case Manager did not violate procedure by eventually appealing what were, in essence, grievance denials by inaction.

Although it was Chavez's responsibility to initiate the appeal process, it is critical here that "[t]he *Grievance Manager* is responsible for following and monitoring operational grievance procedures." (Doc. 50, Ex. A at 5 (emphasis added).) It was the Grievance Manager's job, and not Chavez's, to provide Chavez with a response to his grievances. Notably, Grievance Policy No. 1309 prescribes no time limit for how long the Grievance Manager may take to investigate unresolved grievances or deliver a response to inmates. Unlike in *Roberts*, County Defendants have not argued that there is a maximum time limit for the grievance process, and Grievance Policy No. 1309 contains no such provision. *Compare* 484 F.3d at 1243 (discussing appellees' argument that the full grievance process could take no more than thirty-two days, if properly followed by the institution), *with* (Doc. 50, Ex. A.) Nothing in Grievance Policy No. 1309, on this Court's reading, prevents a

---

[8] Presumably, the Chief of Corrections intended to "concur" with something more than a response of "report will be looked for and reviewed," when he wrote that word on Chavez's Grievance Appeal Form. (Doc. 45, Ex. A.) However, County Defendants have provided no evidence to fill in this gap, and certainly no evidence that Chavez received a response from the Grievance Manager.

grievance from remaining viable for many months if inmates do not receive a response from the Grievance Manager.

It was also the Grievance Manager's responsibility to ensure that Chavez received a true *answer* to his grievances, and this raises a second, distinct problem with County Defendants' argument. Section (D)(2) of Grievance Policy No. 1309 requires the Grievance Manager to investigate the "action taken" by the division manager. (Doc. 50, Ex. A at 5.) Section (D)(3) provides that inmates have three working days to appeal the "decision" of the grievance. (*Id.*) Section (D)(3) provides that "[i]f the inmate does not appeal, it will be understood that he/she has accepted the *answer*." (*Id.* (emphasis added).)

Each of these words connotes affirmative resolution. This makes sense because without a substantive outcome to a grievance, there is nothing for inmates to appeal. Yet as noted above, two of the Disputed Grievances have a handwritten "response" of only "report will be looked for and reviewed." (Doc. 43, Ex. 1-2.) The third says "report will be looked for at this time." *Chavez*, No. CV-08-0074 WJ/ACT, Doc. 28, Ex. 11 at 5.

It is unclear to this Court how Chavez was supposed to appeal these words, which referred only to review that would take place in the future. In the American Heritage Dictionary, the first definition for "decision" is "[t]he passing of judgment on an issue under consideration." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 470 (4th ed. 2000). The feedback Chavez received was that his complaints would be looked for and, if found, considered. This contains no judgment for Chavez to appeal.

Furthermore, there are examples of other grievance forms before this Court that support Chavez's allegations of how the Disputed Grievances were handled. Included in County Defendants' response to the magistrate judge's Proposed Findings and Recommended Disposition

13

were all of Chavez's grievances found after a "review of the available documents." (Doc. 43 at 6.) Within these are four grievance forms of the same type as the Disputed Grievances. (*See id.,* Ex. 4, 5, 9, 11.) On Grievance #7791, there is a substantive answer to Chavez's complaint of loss of personal property. (*Id.*, Ex. 4 ("[H]e looked for Mr. Chavez items in seg 1 and they were not there. Also Mr. Chavez did not ask Lt. Rangei to not have Bo's pack his property until it was already in the sallyp [sic].").) Chavez marked that the problem was not resolved, his grievance was not withdrawn, and unlike the Disputed Grievances, he signed that he wished to appeal. (*Id.*, Ex. 4.) On Grievance #7792, there is also a substantive answer and Chavez signed that he wished to appeal. (*Id.*, Ex. 5.) Chavez did not sign on the appeal line in Grievances #9613 and #9523, but he also marked that these grievances were resolved. (*Id.*, Ex. 11-12.)

The obvious difference between the Disputed Grievances and these other four is the content of the response. When the division manager wrote the results of an investigation as the response, Chavez either marked the grievance as resolved and withdrawn or marked the grievance as unresolved and signed to appeal. When Chavez signed a form that said only "report will be looked for and reviewed," he did not mark at that time that he wished to appeal. Chavez alleges that he never saw the forms again, and County Defendants have not argued otherwise or presented evidence of any decision that Chavez received regarding the Disputed Grievances.

Again, it was the Grievance Manager's responsibility to "[follow] and [monitor] operational grievance procedures." (Doc. 50, Ex. A at 5.) It was not Chavez's fault that he was never provided with actual decisions to appeal. The Grievance Appeal Form indicates that Chavez asked twice for a response or opportunity to appeal. (Doc. 45, Ex. A.)

This Court therefore finds that Chavez did not receive the requisite decision or answer to the Disputed Grievances. This constitutes a second, distinct reason for why the three working day

14

appeal deadline never ran for the Disputed Grievances.  Chavez also did not "[receive a] response from the Grievance Manager," which was necessary to trigger the appeal deadline.  (Section (E)(3), Doc. 50, Ex. A at 5 )

County Defendants' remaining arguments all pertain to the propositions that the Prison Litigation Reform Act requires inmate compliance with agency procedural rules and that an inmate's "failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). These points are simply a restatement of County Defendants' primary argument: that the Disputed Grievances became non-viable under Grievance Policy No. 1309 three business days after Chavez received the forms from the division manager.  In dismissing that argument, this Court also finds that Chavez did follow BCMDC's grievance procedures, at least in regard to the Disputed Grievances.  Thus, *Jernigan* does not apply.

This Court also notes that County Defendants do not explain why Chavez's Grievance Appeal Form was processed, if the grievances being appealed had all become exhausted under BCMDC procedures almost six months earlier.  Chavez even wrote on the form that he was filing the appeal "for purposes of exhausting my administrative remedies . . . ."  (Doc. 45, Ex. A.)  It is unavailing for County Defendants to argue now that the appeal was improper, when it was treated as proper when it was filed.  *Bowen v. City of New York*, 476 U.S. 467, 479 (1986).

## CONCLUSION

Having found that the Disputed Grievances did not trigger the appeal deadline in Grievance Policy No. 1309, and that nothing in the Policy prevented Chavez from appealing the Disputed Grievances when he did, this Court concludes that the Disputed Grievances remained viable through the final disposition date on the Grievance Appeal Form: May 1, 2006.  (Doc. 45, Ex. A.)  This

15

produces total statutory tolling of 184 days for Chavez's § 1983 claims underlying Grievances #7667 and #7668 (*see* Doc. 31 at 5, ¶¶ 24-25), and 183 days for Chavez's § 1983 claim underlying Grievance #7672.[9]  (*Id.* at 5-6, ¶ 26).

Chavez first learned of the events in Grievance #7667 on September 19, 2005, and of the events in Grievances #7668 and #7672[10] on September 24, 2005.  (*Id.* at 5-6, ¶¶ 24-26)  Based on the applicable three year statute of limitations and the tolling calculations, Chavez had until March 22, 2009 to file the underlying § 1983 claim for Grievance #7667 (*id.* at 5, ¶ 24), until March 27, 2009 to file the underlying § 1983 claim for Grievance #7668 (*id.* at 5, ¶ 25), and until March 26, 2009 to file the underlying § 1983 claim for Grievance #7672.  (*Id.* at 5-6, ¶ 26.)  Because Chavez filed his first complaint with regard to these claims on February 18, 2009, all three Disputed Claims are within the statute of limitations and should not have been dismissed.  (*See* Doc. 7, Ex. 1 at 35; Doc. 44 at 6.)

IT IS THEREFORE ORDERED that:

1) Chavez's Motion for Reconsideration (Doc. 45) is GRANTED;

2) The portions of this Court's Order of August 20, 2010 (Doc. 44) that are inconsistent with this Order are WITHDRAWN, to be replaced with the analysis here; and

3) Paragraph 4 of this Court's Order of August 20, 2010 (Doc. 44) is AMENDED to read as follows:

---

[9] The reason for the one-day disparity is because Chavez filed Grievance #7667 and 7668 on September 29, 2005, but filed Grievance #7672 on September 30, 2005.

[10] Although Grievance #7672 says that the events happened "on or about 9-25-05," paragraph 26 of Chavez's complaint (Doc. 31 at 5-6), which corresponds to the grievance, details the events as a continuation of those that occurred in paragraph 25 of Chavez's complaint.  Chavez's alleges that the events in paragraph 25 occurred "on or about September 24, 2005," and this matches the information on Grievance #7668.

"4) any § 1983 claims that arise from pre-February 18, 2006, incidents against Defendants Torres, Sisneros, and Gallardo, with the exception of the § 1983 claims that occurred on September 19, 2005, September 24, 2005, February 8, 2006 and February 9, 2006, are barred by the applicable three year statute of limitations and are dismissed with prejudice."

IT IS SO ORDERED.


_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE