## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

HENRY REYES CHAVEZ,

    Plaintiff,

v.                                                                                                                                       CV 09-1205 BB/WPL

CITY OF ALBUQUERQUE, ET AL.,

    Defendants.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before me on a Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6) filed by Defendant City of Albuquerque (the City). (Doc. 73.)[1] Plaintiff Henry Chavez brought suit against numerous defendants pursuant to 42 U.S.C. § 1983, the New Mexico Tort Claims Act (NMTCA), and New Mexico common law alleging that he was subjected to unconstitutional conditions of confinement while incarcerated at the Bernalillo County Metropolitan Detention Center (BCMDC). (*See* Doc. 31.) A previous order by Judge Black dismissed all of Chavez's NMTCA claims that arose before February 18, 2007 against Defendants Torres, Sisneros, and Gallardo (County Defendants). (Doc. 44 at 6.)[2] After this order was filed, the City was served with Chavez's complaint and filed the Motion to Dismiss that is before me. Chavez filed a response and the City filed a reply. (Docs. 92, 95.)

---

[1] Unless otherwise indicated, all citations to the record are to documents in the present case, # 09-cv-1205-BB-WPL. Where needed for clarification, the case number of this case will also be included in citations.

[2] Although this order also dismissed some of Chavez's § 1983 claims against the County Defendants, it was subsequently amended to restore all of Chavez's § 1983 claims against these defendants. (Doc. 54 at 16-17.)

The City argues that all of Chavez's claims against it are barred by res judicata because Chavez sued the City in a previous lawsuit, in which the City was dismissed with prejudice, and could have litigated his present claims in that suit. *See Chavez v. Jaramillo, et al.*, No. 08-cv-00074-WJ-ACT (D.N.M. July 19, 2010) (case 08cv74). In the alternative, the City contends that Chavez's claims against it which arose after June 30, 2006 should be dismissed because the City ceased to be the operational entity of BCMDC on that date pursuant to the termination of a Joint Powers Agreement between the City and Bernalillo County. The City also argues that some of Chavez's NMTCA claims against it should be dismissed as time-barred.[3]

In response, Chavez argues that his claims against the City that arose after June 30, 2006 should not be dismissed because the City retained some policymaking powers over BCMDC after the Joint Powers Agreement was terminated. Chavez also argues that his claims are not barred by res judicata, because: (1) he and the City signed a Settlement Agreement in case 08cv74 which expressly provided that Chavez could maintain his claims against the City in the instant case; and (2) there is not an identity of the cause of action between his claims in case 08cv74 and the present case.

For the reasons that follow, I recommend that the City's Motion to Dismiss be granted in part and denied in part.

## LEGAL STANDARDS

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the

---

[3] Although the City initially argued that many of Chavez's § 1983 claims are also time-barred (Doc. 73 at 8-9), it withdrew this argument in its reply after familiarizing itself with the filing date of Chavez's original complaint and a previous order by Judge Black that denied a statute of limitations defense raised by County Defendants against Chavez's § 1983 claims. (*See* Doc. 95 at 2 (referencing Doc. 54).)

non-moving party. *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10thCir. 2002) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A *pro se* litigant's pleadings are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the court will not "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

Ordinarily, a court must convert a Rule 12(b)(6) motion to dismiss into a motion for summary judgment when it considers materials outside of the plaintiff's complaint in resolving the motion. *See, e.g.*, *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007); *Whitesel v. Sengenberger*, 222 F.3d 861, 866 (10th Cir. 2000). When such conversion occurs, the parties must be given a reasonable opportunity to present pertinent material before the motion is resolved. FED. R. CIV. P. 12(d); *Alvarado*, 493 F.3d at 1215. However, it is well settled that when resolving a motion to dismiss, a court may take judicial notice of and consider its own records in a prior case involving the same parties. *E.g., Amphibious Partners, LLC v. Redman*, 534 F.3d 1357, 1361-62 (10th Cir. 2008)); *see also Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 216 (4th Cir. 2006) (citation omitted) ("When entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact."). The Tenth Circuit has also approvingly cited a case that permitted a district court to consider a document that was attached to a Rule 12(b)(6) motion, without converting the motion to one for summary judgment, when the document was "integral to the plaintiff's claims and

3

its authenticity [was] not disputed." *Whitesel*, 222 F.3d at 866 (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 n.4 (9th Cir. 1998), *superseded on other grounds by statute*).

Here, although it is necessary to consider materials outside of Chavez's complaint in order to resolve the City's Motion to Dismiss, these materials may be considered without converting the City's motion. The parties both cite to Chavez's complaint in case 08cv74, in which the City was a defendant. I will take judicial notice of the records in that case. The parties' arguments also pertain to the Settlement Agreement (the Agreement) signed by the parties in case 08cv74, which Chavez has attached to his response. Although the Agreement was not a part of this Court's records, its authenticity is not questioned by either side and it is integral to determining whether Chavez's present claims are barred by res judicata. As a result, the Agreement may be considered without converting the City's motion to one for summary judgment.

## RES JUDICATA

The City's first argument is that all of Chavez's claims against it are barred under the doctrine of res judicata because Chavez brought similar claims against the City in case 08cv74.

> Res judicata, or claim preclusion, precludes a party or its privies from relitigating issues that were or could have been raised in an earlier action, provided that the earlier action proceeded to a final judgment on the merits. To apply the doctrine of res judicata, three elements must exist: (1) a judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits.

*King v. Union Oil Co. of California*, 117 F.3d 443, 445 (10th Cir. 1997). The parties agree that there is an identity of parties between the present case and case 0874, but dispute whether there is an identity of the cause of action between the two suits. (Doc. 73 at 11-13; Doc. 92 at 6; Doc. 95 at 6.) Chavez also argues that the dismissal of his claims against the City in case 08cv74 did not constitute "a judgment on the merits in an earlier action" as to his claims in the present case. (Doc. 92 at 4-5.)

4

To determine what constitutes an identity of the cause of action between two lawsuits, the Tenth Circuit uses the transactional approach of the Restatement (Second) of Judgments. *Yapp v. Excel Corp.*, 186 F.3d 1222, 1227 (10th Cir. 1999) (citing *Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1335-36 (10th Cir. 1988)). Under this approach, there is an identity of the cause of action if a claim in a second suit "[arises] out of the same transaction, or series of connected transactions as a previous suit." *Id.* (citations omitted).

> What constitutes the same transaction or series of transactions is "to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."

*Id.* (quoting Restatement (Second) of Judgments § 24 (1982)); *Mitchell v. City of Moore*, 218 F.3d 1190, 1202 (10th Cir. 2000) (same). Although the Tenth Circuit has applied this pragmatic standard in several cases, it has not yet been applied to factual circumstances analogous to those of this case.[4]

The factual allegations and legal claims in Chavez's two suits undeniably share some similarities. In case 08cv74, Chavez sued the City and several other defendants based on an alleged assault that he suffered from a BCMDC corrections officer, Ruben Jaramillo, on November 17, 2005. (*See* case 08cv74, Doc. 1, Ex. 2 at 3-4.) In the present case, Chavez alleges that he suffered multiple attacks and retaliation by both inmates and officials while incarcerated at BCMDC. (Doc. 31.) Chavez claims that these incidents occurred on or about September 19, 2005, September 24, 2005, February 8, 2006, February 9, 2006, March 31, 2006, July 24, 2006, July 25, 2006, August

---

[4] There is a line of cases holding that "all claims arising from the same employment relationship constitute the same transaction or series of transactions for claim preclusion purposes," at least when a second suit is based on conduct that occurred before the first complaint was filed, but that proposition is not relevant to the facts of this case. *Mitchell*, 218 F.3d at 1202-03 (citations omitted). The *Mitchell* line of cases features employees suing the same employer under different federal statutes in consecutive suits.

9, 2006, August 14, 2006, September 21, 2006, April 24, 2007, and November 29, 2007. (*Id.* at 4-12.)

While I agree with the City that both lawsuits "center around misconduct of prison officials and negligent operation of [BCMDC]," (Doc. 73 at 12), the City makes further statements that are factually incorrect. The City contends that the "essential facts underlying both lawsuits are the same" and that "Chavez's Amended Complaint (in the present case) tracks many allegations contained in the [complaint in case 08cv74]," (Doc. 95 at 6.), but this is simply not true. The two suits do not contain any of the same factual allegations. Jaramillo is not a named defendant in the present case, and the November 2005 incident with Jaramillo does not appear in Chavez's complaint in this case. Meanwhile, none of the attacks in Chavez's complaint in this case were alleged in his complaint in case 08cv74.

Even though the facts between the two complaints do not overlap, however, they may still be "related in time, space, origin, or motivation," or form a convenient trial unit. *Yapp*, 186 F.3d at 1227. The attacks alleged in this case all took place at BCMDC and occurred between September of 2005 and November of 2007. The assault by Jaramillo, which also took place at BCMDC, occurred on November 17, 2005, after the first attacks in Chavez's complaint in this case. In both complaints, Chavez sued the City under § 1983 and New Mexico tort law for failing to train BCMDC officials, for maintaining a policy of deliberate indifference to the abuse suffered by inmates, and for negligent operation of a public facility. (Case 08cv74, Doc. 1, Ex. 2 at 6-8, 10-11; case 09cv1205, Doc. 31 at 21-25, 27-28.)

Chavez argues that despite these similarities, a conclusion I reached in a previous Proposed Findings and Recommended Disposition precludes me from finding now that there is an identity of the cause of action between his two suits. (Doc. 92 at 6.) In rejecting Chavez's argument that the

6

continuing violation doctrine applies to his claims in the present suit, I stated that some of Chavez's allegations "arise from discrete incidents that are individually actionable." (Doc. 36 at 16.) That finding, though, has no bearing on whether Chavez's present claims as a whole are barred by res judicata due to his prior suit. Chavez's claims in this suit, despite being individually actionable, may still be sufficiently related in space, time and motivation to those in Chavez's prior suit to mean that the claims in both arise from the same series of transactions.

Because I reject this argument by Chavez, the possibility remains open that there is an identity of the causes of action between the two suits. Ultimately, however, I find that this issue need not be resolved because the dismissal of the City from case 08cv74 did not constitute "a judgment on the merits," for claim preclusion purposes, with respect to the present case. As a result, even if there is an identity of the cause of action between Chavez's two suits, the City still cannot establish res judicata.

In his response, Chavez has submitted the Settlement Agreement that he negotiated with the City and the other defendants in case 08cv74. (Doc. 92 at 11-13.) The City disputes what the language in the Agreement meant but does not dispute the authenticity of the document. (Doc. 95 at 6-8.) In the Agreement, Chavez accepted a settlement sum in exchange for his release of "all claims asserted individually or which may have been asserted in any pleading filed by or on behalf of [Chavez] in Cause No. CIV 08-0074 WJ/ACT . . . ." (Doc. 92 at 11.) However, the Agreement also provided, all in bold print, that:

> This release in no way causes Releasor to release any claims for liability or damages as set forth in his pending cases known as Cause No. CIV 09-1205 and CIV 08-0696. It is mutually understood that Releasor has pending claims against some of the Releasees as named herein and that by signing this release and settlement agreement he is not releasing any claims for liability or damages as set forth in Cause No. CIV 09-1205 and CIV 08-0696.

(*Id.* at 12.) The City, as a defendant, was one of the Releasees. The City was subsequently dismissed with prejudice from case 08cv74 "based upon the agreement of the parties and resolution of Plaintiff's claims against the City of Albuquerque." (Case 08cv74, Doc. 86.)

Consent judgments are normally treated as judgments "on the merits" for claim preclusion purposes. *See, e.g., Russell v. SunAmerica Secs., Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992); 18A CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4443, at 265 (2d ed. 2002) ("[C]onsent judgments ordinarily support claim preclusion but not issue preclusion."). However, "[w]hen a consent judgment entered upon settlement by the parties of an earlier suit is invoked by a defendant as preclusive of a later action, the preclusive effect of the earlier judgment is determined by the intent of the parties." *Keith v. Aldridge*, 900 F.2d 736, 740-41 (4th Cir. 1990) (citing WRIGHT, § 4443 at 262); *see also Satsky v. Paramount Commc'ns*, 7 F.3d 1464, 1468 (10th Cir. 1993) (quoting WRIGHT, § 4443 at 262) ("The basically contractual nature of consent judgments has led to general agreement that preclusive effects should be measured by the intent of the parties."). When a consent judgment is entered upon a settlement agreement, a court must therefore look to the settlement agreement itself to determine if it represents a final judgment on the merits. *See Keith*, 900 F.2d at 741-42; *cf. Satsky*, 7 F.3d at 1468 (stating the same with respect to consent decrees entered as judgments).

> If it is clear that the parties agreed to settle claims that were not reflected in the original pleadings, preclusion may extend to claims that were not even formally presented. Preclusion is most apt to be denied as to new claims that are found not to lie within the terms of the settlement, but care must be taken since the parties may have meant to settle matters that on technical analysis seem to involve a new claim or cause of action.

WRIGHT, § 4443 at 269-72.

Because the City was dismissed from case 08cv74 pursuant to a consent judgment entered upon the parties' Settlement Agreement, (case 08cv74, Doc. 86), I must determine whether the terms of the Agreement reflect an intent of the parties to preclude Chavez's claims against the City in the present case. I conclude that the Agreement does no such thing because it states unequivocally that it "in no way causes [Chavez] to release any claims . . . set forth in his pending cases known as Cause No. CIV-09-1205," and that "[i]t is mutually understood that [Chavez] has pending claims against some of the Releasees as named herein and that by signing this release and settlement agreement he is not releasing any claims for liability or damages as set forth in Cause No. CIV 09-1205 . . . ." Due to this language, the consent judgment in case 08cv74 did not operate as a judgment on the merits with respect to the present case and Chavez's claims are not barred by res judicata.

The City presents several arguments in opposition to this conclusion. First, the City complains that it should not be bound by this language because it had not yet been served with Chavez's complaint in this case when it signed the Agreement. As a result, the City states that "it is questionable whether [the City] had authority to waive the res judicata defense." (Doc. 95 at 7.) The City also reasons that "[a]t the least, it can be assumed no reasonable defendant (like the City) would agree to a proposition, waiving claim preclusion defenses, regarding a case it was not even party to at the time it entered into a settlement agreement or release in another case." (*Id.*)

The City ignores the fact, however, that the touchstone of whether the Agreement precluded Chavez's claims in this case is the intent of the parties as manifested in the Agreement, not the reasonableness of the terms. On the parties' intent, the Agreement language is clear that the City "understood" that Chavez had pending claims against it in other suits, including this one, and that they would not be released as a result of the settlement in case 08cv74. Tellingly, when quoting the

9

Agreement in its reply, the City replaces the reference to this case and the "it is mutually understood" language with an ellipsis. (Doc. 95 at 7-8.) Furthermore, although the City had not yet been served with Chavez's complaint in this case when it signed the Agreement, this case was removed to federal court more than six months before case 08cv74 settled and the City could easily have investigated the nature of this suit before signing the Agreement. Finally, while the City is correct that "the release does not state or imply that [Chavez] can pursue any number of actions without any claim or issue preclusion consequences," (*id.* at 7), the Agreement does expressly state that the City and the other Releasees understood that Chavez was not releasing his claims against them in this case or case 08cv696. If the City did not want Chavez's claims against it in this case to remain actionable after settling the claims in case 08cv74, it should not have signed the Agreement as it was written.[5]

The City next argues that other language in the Agreement "makes it clear that the City did not forego the res judicata defense and can pursue it affirmatively." (*Id.* at 7.) The specific language is the following clause: "Releasor understands and agrees that the claims herein released specifically include, but are not limited to, all claims asserted individually or which may have been asserted in any pleading filed or on behalf of Releasor in Cause No. CIV 08-0074 WJ/ACT . . . ." (Doc. 92 at 11.) For the reasons already given, however, I find that the Settlement Agreement, viewed as a whole, establishes that the intent of the parties was that the Agreement would not preclude Chavez's claims in this case or case 08cv696.

---

[5] Chavez claims that he in fact refused to sign an initial draft of the Agreement which did not contain language stating that the City understood that he had pending claims in the instant case and that they were not released. (Doc. 92 at 5.)

The City's final argument is that a non-binding case holds that "unless the parties have 'expressly' agreed that litigation of one part of a claim will not preclude second suit on another part of the same claim, there is no exception to the principle of claim preclusion/res judicata." (Doc. 95 at 8 (citing *Keith*, 900 F.2d 736, 740 (4th Cir. 1990)).) As a result, the City contends that it is not "estopped" from claiming a res judicata defense because the Agreement did not expressly state that Chavez's suits would not be barred by claim preclusion. (*Id.*) However, *Keith* does not stand for these propositions. As an initial matter, the portion of *Keith* that the City appears to be referencing speaks only to the situation "when the parties have agreed to the splitting of a single claim," which is inapposite to the facts of this case.[6] 900 F.2d at 740. Furthermore, *Keith* actually states that "'express agreement' between the parties that litigation of one part of a claim will not preclude a second suit on another part of the same claim is normally honored by courts." *Id.* (citing WRIGHT, § 4415 at 354). This proposition is consistent with *Keith*'s statement that the preclusive effect of consent judgments entered after settlements is determined by the intent of the parties. *Id.* at 740-41. Applying that principle, I have found that the Agreement manifests the intent that the resolution and dismissal of Chavez's claims in case 08cv74 would not preclude Chavez's claims in this case.

Before concluding this section, the City's briefing on this issue must be addressed. In its Motion to Dismiss, the City argued that Chavez's claims were barred by res judicata because of his claims in case 08cv74 but did not attach or even reference the Agreement. (*See* Doc. 73 at 9-13.) If Chavez had not attached the Agreement in his response, this Court would not have known of its terms unless the City subsequently disclosed the Agreement in its reply. The City's failure to

---

[6] Chavez's claims against the City in this case originated from an entirely different complaint than in case 08cv74, based on different factual allegations and brought against many different defendants than the ones in case 08cv74.

11

disclose at that stage could easily have been found to violate a New Mexico Rule of Professional Conduct that requires counsel to "not knowingly . . . fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel . . . ." NMRA 16-303(A)(2).[7] Additionally, as I have already noted, even after the Agreement was disclosed the City continued to try to hide its legal effect by selectively quoting the Agreement in its reply and omitting critical language. (*Compare* Doc. 92 at 12, *with* Doc. 95 at 6-7.) The City is warned that future lack of candor toward this Court will result in the imposition of sanctions.

For the foregoing reasons, I find that Chavez's claims are not barred by res judicata and recommend that the City's Motion to Dismiss on that ground be denied.

### CLAIMS ARISING FROM INCIDENTS THAT OCCURRED AFTER JUNE 30, 2006

The City next argues that it is not liable for Chavez's claims based on incidents that occurred after June 30, 2006, because this was the last day that the City had operational and administrative control of BCMDC. (Doc. 73 at 4-5; Doc. 95 at 2-3.) As a result, the City argues that Chavez's claims against it arising from incidents that occurred on or about July 24, 2006, July 25, 2006, August 9, 2006, August 14, 2006, September 21, 2006, April 24, 2007, and November 29, 2007 must be dismissed.

I agree with the City that all of Chavez's claims against it "depend upon the City being involved in the operation of [BCMDC]." (Doc. 73 at 4.) The City is a named defendant under three

---

[7] The New Mexico Rules of Professional Conduct apply to cases brought in this district. D.N.M.LR-Civ. 83.9.

of Chavez's claims.[8] Count II, brought under the NMTCA, alleges that the City is liable under the theory of *respondeat superior* due to its operation of BCMDC and supervision of BCMDC employee defendants. (Doc. 31 at 22-23.) Count III alleges that the City is liable for negligent operation of a public facility,[9] including failure to train and supervise employee defendants and failure to institute and enforce safeguards to protect pretrial detainees from assault and battery by officers and inmates. (*Id.* at 23-24.) Count IV, brought under § 1983, alleges that individual defendants retaliated against Chavez pursuant to a custom, practice and policy of the City that demonstrated deliberate indifference toward Chavez's rights. (*Id.* at 24-25.) For the City to be liable under Chavez's tort claims, it had to have control over BCMDC procedures or the training and supervision of BCMDC employees. *See Weinstein v. City of Santa Fe*, 916 P.2d 1313, 1318-19 (N.M. 1996) (discussing when a city may be held liable under *respondeat superior*). For the City to be liable under Chavez's § 1983 claim, a policy or custom of the City must have been the "moving force" behind the retaliation by individual defendants. *See Myers v. Oklahoma Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).[10] Therefore, Chavez cannot maintain any of his claims against the City for

---

[8] The City appears to be under a misconception as to the claims in which it is a named defendant. While Chavez brought several additional claims against "BCMDC Supervisory Defendants," the City is expressly not included under this term. (Doc. 31 at 22.)

[9] I have previously found that this claim falls under the NMTCA. (*See* Doc. 36 at 14 n.8.) The City agrees with this conclusion, (Doc. 95 at 4), and Chavez does not dispute it.

[10] In the context of this claim, the City is only liable for actions taken by employees in compliance with official policy or custom because "under § 1983, municipalities cannot be held liable for the actions of others under the common law principle of *respondeat superior*; they are responsible only for their own actions." *Simmons v. Unitah Health Care Special Serv. Dist.*, 506 F.3d 1281, 1284 (10th Cir. 2007) (citing *Monell*, 436 U.S. at 691-95).

incidents that occurred when the City no longer had any operational, supervisory, or policymaking powers over BCMDC and its employees.

The City argues that it was "divested of any power or authority to set policies and procedures for BCMDC" after June 30, 2006, pursuant to its termination of a Joint Powers Agreement (JPA) with Bernalillo County (the County). The factual history of the JPA and municipal control of BCMDC is recounted in a recent New Mexico case. *See Board of Cnty. Comm'rs of Cnty. of Bernalillo v. Chavez*, 178 P.3d 828 (N.M. Ct. App. 2007) ("*Board v. Chavez*"). In 2002, the City and the County entered into the JPA for joint operation of BCMDC. *Id.* at 829. The JPA "provided for the creation of" the Albuquerque Bernalillo County Government Commission (ABCGC), "to govern all [BCMDC] policy matters and budget differences." *Id.* The ABCGC was comprised of officials from both the County and the City, including the Mayor of Albuquerque.[11] *Id.* In April of 2005, the Mayor gave notice to the County that the City was terminating the JPA effective June 30, 2006. *Id.* In February of 2006, the Albuquerque City Council met and approved Resolution 06-32 (R-06-32), which stated in part that "[t]he City should proceed with the necessary steps to transfer the operation and administration of the [BCMDC] to the County by July 1, 2006 . . . ." *Id.* at 830. In *Board v. Chavez*, the New Mexico Court of Appeals held that R-06-32 ratified the Mayor's notice letter and properly terminated the JPA, effecting transfer of operation of BCMDC to the County by July 1, 2006. *Id.* at 833-34.

In response, Chavez does not dispute that operation of BCMDC was transferred to the County, effective July 1, 2006. However, Chavez argues that "it appears from [*Board v. Chavez*]

---

[11] Specifically, these officials were "the Mayor, one City Councillor, two County Commissioners, the City's Chief Administrative Officer, the County Manager, the County Comptroller, and the Director of Council Services." *Board*, 178 P.3d at 829.

14

that the ABCGC continued to govern all [BCMDC] policy matters and budget differences to some extent under the JPA." (Doc. 92 at 4.) Chavez contends that "[i]f that is the case, the City can still be held liable for all of Plaintiff's claims after June 30, 2006, under the theory of supervisory capacity because it established policies, procedures and customs with respect to [BCMDC]." (*Id.*)

In reply to Chavez, the City does not address whether the ABCGC continued to function with the same composition or policymaking powers over BCMDC after the termination of the JPA. Although it appears possible that one or both of these may have changed, since *Board v. Chavez* held that R-06-32 terminated the JPA and the JPA had established the ABCGC, neither the City's briefs nor *Board v. Chavez* speak to these issues. While R-06-32 did reference the "transfer [of] the operation and administration of the BCMDC to the County by July 1, 2006," it did not dissolve or otherwise mention the ABCGC. *Board v. Chavez*, 178 P.3d at 830. *Board v. Chavez* only discusses the ABCGC in two sentences and describes its powers and composition when it was created by the JPA, before the JPA was terminated. *Id.* at 829. There is therefore nothing in the record before me indicating whether the ABCGC continued to "govern all [BCMDC] policy matters" after June 30, 2006, *id.*, and whether the Mayor of Albuquerque and other city officials continued to serve on it. If they did, the City may still be liable for Chavez's claims that arose after June 30, 2006.

In light of this open factual issue, I cannot conclude that the City ceased to have any policymaking powers over BCMDC after the JPA was terminated. Viewed in the light most favorable to Chavez, his allegations based on incidents after June 30, 2006 state a plausible claim for relief against the City. *Iqpal*, 129 S. Ct. at 1949-50. I therefore recommend that Chavez's claims arising from incidents after June 30, 2006 not be dismissed on this ground.

**STATUTE OF LIMITATIONS**

The City's final argument is that all of Chavez's NMTCA claims which arose before February 18, 2007 should be dismissed as time-barred.[12] These include Chavez's claims arising from incidents on or about September 19, 2005, September 24, 2005, February 8, 2006, February 9, 2006, March 31, 2006, July 24, 2006, July 25, 2006, August 9, 2006, August 14, 2006, and September 21, 2006. (*Id.* at 4-8.)

Judge Black has previously held that all of Chavez's NMTCA claims against the County Defendants that arose before February 18, 2007 are barred by the applicable two-year statute of limitations. (Doc. 44 at 6.) Applying the same analysis here, these claims are also barred as against the City. Chavez does not dispute this conclusion.

Consequently, I recommend that Chavez's NMTCA claims against the City that arise from incidents on or about September 19, 2005, September 24, 2005, February 8, 2006, February 9, 2006, March 31, 2006, July 24, 2006, July 25, 2006, August 9, 2006, August 14, 2006, and September 21, 2006 be dismissed with prejudice.[13]

---

[12] In its briefs, the City only refers to Chavez's claims that arose before June 30, 2006 when arguing that Chavez's NMTCA claims are time-barred. (Doc. 73 at 8; Doc. 95 at 5.) This appears to be because the City assumed that all of Chavez's claims which arose after June 30, 2006 would be dismissed because of the termination of the JPA. However, because the City references the February 2009 filing date of Chavez's complaint and the applicable two-year statute of limitations for Chavez's NMTCA claims, I will construe its motion as seeking dismissal of all of Chavez's NMTCA claims against it that are time-barred.

[13] As noted previously, the City has withdrawn its argument that Count IV, a § 1983 retaliation claim, should be dismissed for any of the incidents alleged in Chavez's complaint. Judge Black has already found that none of Chavez's § 1983 claims brought against the County Defendants are barred by the applicable three-year statute of limitations. (Doc. 44 at 6, *as amended by* Doc. 54 at 16-17.) As such, Count IV is still standing against the City with respect to all of the incidents alleged in Chavez's complaint.

## CONCLUSION

For the foregoing reasons, I recommend that the City's Motion to Dismiss (Doc. 73) be granted in part and denied in part. I recommend that the motion be denied with respect to the City's res judicata defense and argument that all of Chavez's claims that arose after June 30, 2006 be dismissed due to the termination of the JPA. However, I recommend that all of Chavez's NMTCA claims against the City that arose before February 18, 2007 be dismissed with prejudice.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_William P. Lynch_
William P. Lynch
United States Magistrate Judge