# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

HENRY REYES CHAVEZ,

    Plaintiff,

v.                                                                                                                CV 09-1205 BB/WPL

CORRECTIONAL MEDICAL SERVICES, et al.,

    Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

On September 15, 2011, Plaintiff Henry R. Chavez filed a Motion to Enforce Settlement Agreement With Defendants City of Albuquerque and Harry Tipton. (Doc. 130.) Defendants City of Albuquerque and Harry Tipton ("Defendants")[1] filed a response in opposition to the motion on September 23, 2011. (Doc. 134.) Chavez did not reply to Defendants' response. Since the allotted time to reply has passed (*see* D.N.M.LR-Civ. 7.4(a)), and since each side has sufficiently briefed its position, I will proceed to offer a recommendation as to the disposition of this motion. After having carefully reviewing the relevant arguments, documents, and law, I recommend that the court DENY Chavez's Motion to Enforce Settlement Agreement With Defendants City of Albuquerque and Harry Tipton due to the fact that no settlement agreement exists.

### FACTS

Chavez brought suit pursuant to 42 U.S.C. § 1983, the New Mexico Tort Claims Act, and

---

[1] There are other defendants in the case, but this motion pertains only to the City of Albuquerque and Harry Tipton. The use of "Defendants" in this motion refers exclusively to these two parties.

common law alleging that he was subject to unconstitutional conditions of confinement while incarcerated at the Bernalillo County Metropolitan Detention Center. (*See* Doc. 31.) Between July and September 2011, he engaged in settlement negotiations with counsel for Defendants, Lalita Devarakonda. (Doc. 130 at 1-2.) He claims these negotiations resulted in a binding settlement agreement for $5,000 in exchange for dismissing Defendants City of Albuquerque and Harry Tipton from the case. (*Id.* at 4.)

The negotiations began when Chavez sent a letter to Devarakonda offering to settle for $25,000. (Doc. 130 at 1, 6; Doc. 134 at 1.) Devarakonda eventually countered with an offer of $1,500. (Doc. 130 at 9.) At this point the facts slightly vary. According to Defendants, on August 26, 2011, they agreed to settle for $5,000, provided that Chavez sign a "Settlement Agreement and Release of Claims" and approve a proposed order of dismissal. (Doc. 134 at 1; Doc. 134 Ex. A at 1.) Chavez, however, claims that the agreement was only conditional on having the settlement "in writing," such that he could not "renege."(Doc. 130 at 2.) He immediately sent a handwritten fax to Devarakonda after the telephone discussions, which read, "Just a quick letter to let you know that I can accept no less than $5,000.00, to settle all Claims [*sic*] against your clients. I will call you on Monday, August 29, 1011, to discuss this matter further. Thank you." (*Id.* at 10.) On August 31 and September 1, Devarakonda sent Chavez the "Settlement Agreement and Release of Claims" form in the mail, and she sent copies to Chavez's aunt via e-mail. (Doc. 130 at 3; Doc. 134 at 2; Doc. 134 Ex. B). Chavez acknowledges in his motion that Devarakonda sent his aunt these documents. (Doc. 130 at 3.) Devarakonda attests that she told Chavez repeatedly on the phone that the settlement was not final unless the documents were signed. (Doc. 134 at 2; Doc 134 Ex. A at 1, 2.)

On September 2, 2011, Devarakonda learned that she might be representing several more individual officers of the City of Albuquerque who had been previously been represented by the

county attorney. (Doc 134 Ex. A at 2.) Devarakonda informed Chavez of this change, and she asked him whether he was "still open for negotiations." (*Id.*) Chavez recounts the conversation differently, claiming that Devarakonda told him the City would "back out of the deal" if the additional defendants were not included in the settlement agreement. (Doc. 130 at 3.) The Defendants increased the settlement offer to $7,000, but Chavez told them he would not settle for less than $10,000. (Doc. 134 at 3.) When Devarakonda told Chavez that she would need to get approval for anything over $7,000, he threatened to file a motion to enforce the agreement for $5,000. (Doc. 134 Ex. A at 3.) During this time, Chavez never approved the draft orders for dismissal, nor did he sign the "Settlement Agreement and Release of Claims" form. (Doc. 134 Ex. A at 2.)

### LEGAL STANDARDS

The trial court has the power to summarily enforce a settlement agreement even when litigation is pending. *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993). Since a settlement agreement is a contract, issues involving the existence and formation of a purported settlement agreement are resolved by applying state contract law. *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004) (citing *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000)). *See also Builders Contract Interiors, Inc. v. Hi-Lo Indus., Inc.*, 134 P.3d 795, 798 (N.M. App. 2006). The determination of the existence of a contract is a factual determination which must be supported by substantial evidence. *Trujillo v. Glen Falls Ins. Co.*, 540 P.2d 209, 211 (N.M. 1975). Thus, I turn to New Mexican law for rules regarding the formation of a contract.

"Ordinarily, to be legally enforceable, a contract must be factually supported by an offer, an acceptance, consideration, and mutual assent." *Garcia v. Middle Rio Grande Conservancy Dist.*, 918 P.2d 7, 10 (N.M. 1996) (citations omitted). Offerees must unconditionally accept an offer in order to constitute a contract. *See Stevenson v. Louis Dreyfus Corp.,* 811 P.2d 1308, 1310 (N.M. 1991)

(citing *Polhamus v. Roberts*, 175 P.2d 196, 198 (N.M. 1946)). Should the offeree accept the offer, but add qualifications, then this is not an acceptance; it is a counter-offer. *Id. See also* RESTATEMENT (SECOND) OF CONTRACTS § 59 (1981). Such an offer is deemed subject to a condition precedent, which is "an event that must occur before there is a right to an immediate performance, before there is a breach of a contractual duty, and before the usual judicial remedies are available." *K.L. Conwell Corp. v. Albuquerque*, 802 P.2d 634, 638 (N.M. 1990) (citations omitted). Underlying the offer and acceptance, the contract must be based on the expression of mutual assent by the parties. *Trujillo,* 540 P.2d at 210. Mutual assent must be indicated by the language or actions of the parties. *Id.*

## DISCUSSION

Whether Chavez and Defendants entered into a valid settlement agreement turns on these basic principle of contract formation. Defendants argue that there was no mutual assent because Plaintiff never signed the "Settlement Agreement and Release of Claims" form and he did not approve the Motion to Dismiss. (Doc. 134 at 4.) According to Defendants, these documents were "a prerequisite for the settlement agreement," which meant that everything up to that point had been "settlement discussions" and nothing more. (*Id.*) I agree with Defendants' conclusion, but I approach the negotiations through a different set of principles. Rather than assessing whether there was mutual assent in the abstract, I look to see if I can identify a definite offer and acceptance, which in turn will determine whether there was in fact a contract.

When Chavez mailed his initial letter to Devarakonda on July 9, 2011, he made an offer of settlement. (Doc. 130 at 6.) Defendants rejected the offer when it sent Chavez a counter-offer of $1,500. (Doc. 130 at 9.) After several discussions on the phone, the parties agreed to settle for $5,000. (Doc. 130 at 2.) It is unclear if Chavez offered to settle for $5,000 and Defendants

4

conditionally agreed (which would constitute another counter-offer), or if Defendants made an offer to settle subject to a condition precedent. Either way, the contract was not fully formed during these phone conversations because Chavez needed to perform the condition to create a valid contract.

The briefs and evidence paint the terms of the condition in two lights.[2] Defendants allege that Devarakonda offered to settled for $5,000 on the condition that Chavez sign the "Settlement Agreement and Release of Claims" form and approve the draft order dismissing the Defendants from the case. (Doc. 134 Ex. A at 1.) Chavez alludes to the presence of a condition in his motion, but his characterization is far simpler; he understands the condition as a requirement that the agreement be in writing. (Doc. 130 at 2 ( "[S]he would require [the agreement] in writing to have proof in the event Plaintiff 'tries to renege.'").) However, I need not determine the precise contours of the condition because according to either version, there is substantial evidence to support the conclusion that the condition precedent was never met and the contract was never formed.

If I view the condition according to Chavez's terms, the faxed handwritten note would not have satisfied the condition. His fax reads like a demand or an offer to settle, not like the acceptance of an offer, when he can "accept no less than $5,000.00." (Doc. 130 at 10.) He does not write that he accepts $5,000 or that he has agreed to settle all claims. Additionally, the fax closes "I will call you on Monday, August 29, 2011, to discuss this matter further," which indicates that there is still more to discuss in order to reach an agreement. (*Id.*) This notion is reinforced by the fact that Chavez was more than willing to renegotiate the settlement amount with Devarakonda once she informed him that she would be representing additional parties. (*Id.*) His willingness to continue

---

[2]Because Chavez did not file a reply brief, he never attacked Defendants' description of the condition. However, a reading of his motion makes it appear as if he believed he satisfied Devarakondra's request through his fax sent on August 26, 2011. (Doc. 130 at 2.) For this reason, I believe that the parties would agree that there was a condition, but disagree as to its terms.

5

negotiations is not indicative of a validly formed contract.

Chavez clearly did not meet the condition as defined by Devarakonda's version of the facts. She claims to have told him he needed to sign forms and approve a draft order. He never signed the forms. (Doc. 134 at 8.) In failing to sign the forms while the offer was open, he never accepted and there was never a valid settlement agreement.[3]

## CONCLUSION

Chavez was extended an offer to settle for $5,000, subject to a condition precedent. Regardless of the precise terms of that condition, Chavez failed to satisfy it. Thus, no contract to settle was formed by the parties. For this reason, I recommend that the Court DENY Chavez's motion to enforce the settlement agreement.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_____
William P. Lynch
United States Magistrate Judge

---

[3] Since there was no contract formed, I will not address Defendants' formation defenses of Mutual Mistake of Fact and Statute of Frauds. (Doc. 134 at 6.)